IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MICHAEL VEIS, | CIVIL NO. 04-840-MO |
| Plaintiff, | OPINION AND ORDER<br>RE: DEFENDANT'S MOTION FOR |
| v. | SUMMARY JUDGMENT |
| APRIA HEALTHCARE, INC., | |
| Defendant. | |

**MOSMAN, J.,**

Plaintiff Michael Veis alleges that his former employer, defendant Apria Healthcare, Inc., violated Oregon law by terminating him in retaliation for his workplace safety complaints and workers' compensation claims. Before the court is defendant's motion for summary judgment. For the reasons set forth below, the court grants defendant's motion.

I.   Facts[1]

Defendant Apria Healthcare, Inc. ("Apria") provides home health care products and services, including medical equipment such as oxygen-filled tanks for patients who have respiratory conditions. Among Apria's nearly 10,000 employees nationwide was plaintiff Michael Veis, who began working at Apria's Portland facility in 1999. His job consisted

---

[1] On defendant's motion for summary judgment, these facts are recounted in the light most favorable to plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, pursuant to Local Civil Rule 56(f), "material facts set forth in the concise statement of the moving party . . . will be deemed admitted unless specifically denied, or otherwise controverted by a separate concise statement of the opposing party."

PAGE 1 - OPINION AND ORDER (MOTION FOR SUMMARY JUDGMENT)

primarily of purging and re-filling oxygen tanks sold by Apria. During the time period relevant to this action, plaintiff was supervised by Todd Jackson, who in turn was supervised by Rick Hansen.

During his tenure at Apria, plaintiff complained verbally about the safety of working conditions there, including the filling of oxygen tanks that were too old to be legally filled, failing to repair leaky oxygen valves, excessive heat in the oxygen room, and failure to provide adequate hearing protection to workers. In early 2003, plaintiff learned he had developed hearing loss, allegedly caused by loud noises generated during the oxygen tank purging process. Plaintiff requested that Apria provide him a copy of a noise study Apria conducted in response to plaintiff's prior complaint. Apria initially resisted plaintiff's request, but eventually provided plaintiff a copy of the study.

In the summer of 2003, plaintiff submitted two formal written complaints to Apria in which he detailed several safety concerns and complaints about Mr. Jackson. About the same time, plaintiff sought medical treatment for stress. Plaintiff's doctor prescribed him medication and imposed restrictions on the type of work activities he could perform. When plaintiff presented these work restrictions to Apria, Hansen questioned them.

By this time, some individuals at Apria had clearly become irritated with plaintiff. For example, in an August 8, 2003 email from Apria Human Resource Representative Anne Ushler to Hansen, Ms. Ushler refers to plaintiff as "a cancer" and "a real pain."

On August 27, 2003, plaintiff injured his wrist when entering the oxygen tank filling room. The injury occurred when Hansen opened the oxygen room's heavy metal door into plaintiff's wrist as plaintiff attempted to unlock the door from the outside. Plaintiff informed

Jackson of his injury, and asked Jackson "do I need to take a pee test because this happened at work?" Plaintiff testified at deposition that he asked this question "[b]ecause when you get injured on the job, I have always heard you might have to take a pee test." Jackson told plaintiff he did not need to take a drug test and instructed plaintiff to leave work and seek medical treatment. Jackson knew that plaintiff's wrist injury would likely lead to a workers' compensation claim. Plaintiff went to see his doctor, who treated the injury and took plaintiff off work.

After learning that plaintiff had left work due to his injury, Hansen sought guidance from Ed Rebella, Apria's Pacific Division Human Resources Manager, regarding whether he was required to have plaintiff take a drug test because the injury had occurred on the job. Rebella was away from his email that day, but Hansen ultimately decided to require plaintiff to take a drug test, in accordance with Apria's policies regarding workplace accidents. Despite the fact that Hansen allegedly caused plaintiff's injury, Hansen himself did not take a drug test, nor was he required to under Apria's policies.

That afternoon, Hansen contacted plaintiff by telephone and notified him that he was required to take a drug test. Although Apria's drug testing policies provide that an employee injured in a workplace accident should be tested for drugs at the medical facility where the employee seeks treatment, Hansen instructed plaintiff to submit to a drug test at Concentra Health Services ("Concentra"), an independent laboratory used by Apria for drug testing. Hansen did not provide plaintiff with a "chain of custody" form, as required by Apria's drug testing policies.

Plaintiff arrived at Concentra just before it closed at 5:00 p.m. Concentra lab technician

Raymond Dahmen provided plaintiff with a urine sample cup. The cup had a temperature strip adhered to it with a measurable temperature range of 90 to 100 degrees Fahrenheit. Plaintiff submitted a urine sample. Dahmen waited four minutes – longer than provided for under Federal Department of Transportation ("DOT") testing protocols[2] – before checking the temperature strip on the sample cup, and he could not identify any temperature registering on the strip when he did check. Dahmen then removed a temperature strip from another sample cup and affixed it to plaintiff's sample cup. Dahmen reported that the new temperature strip, which was capable of measuring temperatures as low as 88 degrees Fahrenheit, reported the temperature of the sample to be 88 to 89 degrees Fahrenheit. Samples with temperatures below 90 degrees Fahrenheit are invalid under DOT protocols.

      Dahmen attempted to contact Apria for guidance regarding his concerns about the temperature of plaintiff's first sample, but could not reach anyone at Apria after business hours. Dahmen asked plaintiff to submit a second sample and provided him another cup. Within thirty minutes of submitting the first sample, plaintiff provided another urine sample. Dahmen did not visually monitor plaintiff as he provided his second sample, as is required by DOT procedures following a below-temperature sample. After plaintiff provided a second sample, Dahmen again waited before checking its temperature. When Dahmen did check, the strip again did not register any temperature. Dahmen again removed a temperature strip from another sample cup and affixed it to plaintiff's sample cup. Dahmen reported that the new temperature strip registered a temperature of 88 degrees Fahrenheit. Plaintiff read the temperature as 94 degrees Fahrenheit.

      Following the second test, Dahmen was again unable to contact Apria to determine what

---

[2] Apria's Substance Abuse Policy expressly incorporates DOT testing protocols.

to do.  At that point plaintiff indicated he intended to leave Concentra and return the following morning to provide another urine sample.  Concentra personnel warned plaintiff that if he left the laboratory, the two under-temperature samples he had given might be considered by Apria as a refusal to test.  Nevertheless, plaintiff left the facility.

On the morning of August 28, 2003, Dahmen called Jackson and related the events of the previous evening.  Russell White, a Concentra technician, also faxed Jackson a "flow sheet," which reported Concentra's description of what had transpired the previous evening.  Jackson in turn informed Hansen of what he had learned.

After receiving the information about plaintiff, Hansen called Rebella and told him about plaintiff's two attempts to give a sample for drug testing.  Rebella told Hansen that, under Apria's Substance Abuse Policy, failing twice to provide an acceptable sample[3] was considered a refusal to test, and grounds for discharge.  After confirming his understanding of the company's policy with Kathy Klein, Director of Human Resources and Risk management, Rebella told Hansen that plaintiff should be discharged from employment.

On the day of plaintiff's wrist injury, Jackson reported the injury to Apria's workers' compensation department.  The following day, plaintiff formally initiated three workers' compensation claims: one for his wrist injury, one for his hearing loss, and one for stress.  Apria subsequently denied all three claims.  After a contested hearing on the compensability of plaintiff's hearing loss claim, an administrative law judge determined the claim was compensable

---

[3] Apria's Substance Abuse Policy does not specifically reference any temperature requirement for urine samples.  However, the Policy states that all tests will be performed according to DOT standards which, as noted above, reject samples with temperatures below 90 degrees Fahrenheit.

and ordered Apria to accept that claim. Litigation involving the other two claims is pending.

Plaintiff returned to work on August 29, 2003. Apria terminated plaintiff that day, purportedly for his failure to provide a proper urine sample to Concentra. Plaintiff brought suit in Oregon state court alleging a claim of retaliation for pursuing workers' compensation rights under ORS 659A.040, 659A.043 and 659A.046, and a claim of retaliation for reporting safety violations under ORS 654.062. Apria subsequently removed, invoking this court's diversity jurisdiction.

II.     Summary judgment standard

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant initially shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting "forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). Evaluating whether a genuine issue of material fact exists requires the court to view the record in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

"[W]hen entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the *McDonnell Douglas* burden-shifting scheme." *Snead v. Metropolitan Prop. & Casualty Ins. Co.*, 237 F.3d 1080 (9th Cir. 2001). Under the *McDonnell Douglas* framework, plaintiff must first make a prima facie showing of retaliation. *Id*. at 1087. To establish a prima facie case of retaliation in violation of ORS 654.062(5)(a) or ORS 659A.040, plaintiff must demonstrate that: (1) he engaged in activity protected by these statutes; (2) Apria took adverse employment action

against plaintiff; and (3) plaintiff's participation in protected activity was a substantial factor in his termination. *Williams v. Freightliner, LLC*, 196 Ore. App. 83, 100 P.3d 1117 (2004); *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2003); *Seitz v. State ex rel. Albina Human Res. Ctr.*, 100 Ore. App. 665, 675, 788 P.2d 1004 (1990) (Oregon courts "use the 'substantial factor' test to determine whether plaintiff's protected activities were the cause of defendant's adverse actions."). If plaintiff does so, Apria then has the burden of producing evidence of a legitimate, non-retaliatory reason for the adverse action. The burden then shifts back to plaintiff to show that Apria's proffered reason is actually a pretext for retaliation. *Snead*, 237 F.3d at 1087.

III.    Analysis

    A.    Prima facie case

Apria does not dispute that plaintiff engaged in protected activity, nor that plaintiff suffered an adverse employment action. Rather, Apria argues plaintiff has failed to show the existence of a genuine issue of material fact regarding whether plaintiff's protected activity was a substantial factor in his termination.

In seeking to establish the necessary causal link between his termination and his protected activity, plaintiff offers evidence that Concentra did not follow the proper procedures when testing him for drugs. For example, plaintiff alleges that Concentra technicians violated DOT regulations by: (a) waiting too long before attempting to read the temperature on the sample cup; (b) removing a temperature strip from another cup and attaching it to the cup containing plaintiff's sample; and (c) failing to visually monitor plaintiff as he provided his second sample. It is not clear what relevant inference plaintiff believes a factfinder could draw

from these alleged deviations from proper drug testing procedures. Plaintiff offer no evidence that anyone at Apria instructed Concentra to deviate from proper procedures. To the contrary, plaintiff's own recitation of the evidence shows Concentra attempted to contact Apria to ask how to proceed after failing to identify any temperature on plaintiff's samples, but Concentra technicians could not reach anyone at Apria. Accordingly, there is no evidence connecting Concentra's alleged failure to follow procedures to any improper motive on the part of Apria.

Plaintiff also provides evidence that Apria failed to comply with its own drug testing policies by: (a) requiring plaintiff to be tested at Concentra rather than at the doctor's office where he received treatment for his wrist injury; (b) failing to provide plaintiff the required "chain of custody" form; and (c) terminating plaintiff for refusal to provide an adequate sample, despite the fact that Apria's drug testing policy does not list failure to provide a sample of a certain temperature as a refusal to test. As with plaintiff's evidence of Concentra's failure to follow procedures, it is not clear what inference of causation a factfinder could draw from plaintiff's claims that Apria failed to provide him a chain of custody form, and wrongly forced him to be tested at Concentra, rather than where he received treatment for his wrist. Plaintiff offers no argument regarding how these alleged deviations from company policy suggest that Apria discharged plaintiff because of his protected activity.

The most that can be said in plaintiff's favor is that terminating an employee for a drug policy violation, where the conduct at issue does not violate any express term of that policy, could give rise to an inference of ulterior motive. But that inference, weak to begin with, becomes too slender a reed to support plaintiff's argument where, as here, the drug policy incorporates by reference regulatory language that gives rise to the violation. Even if these

PAGE 8 - OPINION AND ORDER (MOTION FOR SUMMARY JUDGMENT)

alleged deviations from Apria's drug testing policies are viewed in conjunction with evidence that some individuals at Apria may have been irritated with plaintiff for filing safety complaints or workers' compensation claims, what is missing is any evidence that Rebella, the Apria manager who made the decision to terminate plaintiff, knew of plaintiff's participation in protected activities. To sustain a claim of retaliatory discharge, plaintiff must present evidence from which a reasonable trier of fact could conclude that the decision-maker who terminated his employment was aware that he had engaged in protected activity. *Raad v. Fairbanks North Star Borough*, 323 F.3d 1185, 1197 (9th Cir. 2003). In the instant action, plaintiff fails even to assert that Rebella was aware of his complaints or his workers' compensation claims, let alone point to any evidence from which a trier of fact could so conclude. Accordingly, plaintiff fails to state a prima facie case of retaliation.

    B.    Pretext

Apria has articulated a legitimate, non-retaliatory reason for its decision to terminate – namely, that Rebella believed plaintiff had committed a terminable offense by failing to provide an adequate urine sample in accordance with Apria's drug testing policies. To rebut this non-retaliatory reason, plaintiff must show that Rebella's proffered reason is not credible, and the real reason for his decision was retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993).

Plaintiff first argues that Apria's stated reason for his termination is not credible because forcing him to take a drug test following his wrist injury, when there was no indication that he was responsible for the accident, did nothing to further Apria's stated goal of ensuring a drug free workplace. However, plaintiff does not contest that this is Apria's policy, that it was in place

well before plaintiff's accident, nor that it was commonly enforced at Apria. In fact, plaintiff was well aware of the policy and actually asked whether he would need to take a drug test after he was injured. Had plaintiff produced evidence that the policy was selectively enforced, that would be compelling evidence that its enforcement in this case was motivated by retaliation. In the absence of such evidence, however, plaintiff's allegation that Apria's policy is ineffective in achieving its stated goals is of no assistance to plaintiff in establishing that Apria's stated reason for his termination was a pretext for retaliation.[4]

As previously noted, plaintiff has not provided any evidence that Rebella knew about plaintiff's complaints or workers' compensation claims. Instead, plaintiff argues that the retaliatory motives of other Apria employees set in motion the sequence of events that ultimately led to his termination:

> If the defendant had not been upset with plaintiff for his safety complaints and work related injuries, it would not have required him to even take a urine test. . . . Had plaintiff not been required to report to Concentra to provide urine samples, the purported failure to provide warm enough urine would not have occurred and the plaintiff would not have been terminated. The evidence establishes the required causal connection.[5]

The Ninth Circuit rejected a similar theory in *Vasquez v. County of Los Angeles*, 349 F.3d

---

[4] Veis further argues that testing Veis, who had been injured in a workplace accident, without testing Hansen, whom Veis alleges caused the accident, constitutes workers' compensation discrimination in violation of Oregon law. Specifically, Veis argues that Apria's policy discriminates by treating injured workers involved in an injury accident differently from non-injured workers involved in an injury accident. ORS 659A.040(1). However, Oregon law provides that an employee cannot receive workers' compensation benefits for a workplace injury if the employee's consumption of alcohol or illegal drugs was a "major contributing cause" of the injury. ORS 656.005(C). While there was no reason to believe Veis was under the influence of drugs or alcohol at the time of his injury, Veis offers no legal support for the proposition that Oregon law prohibits employers from enacting and uniformly enforcing policies requiring drug testing of any employee injured in a workplace accident.

[5] Pl.'s Opp. Br. at 18-19.

PAGE 10 - <u>OPINION AND ORDER (MOTION FOR SUMMARY JUDGMENT)</u>

634, 640 (9th Cir. 2003). In that case, Francisco Vasquez worked as a probation officer at a youth detention facility. Vasquez's co-worker, Kelly Burgland, made several discriminatory remarks to Vasquez regarding his national origin, and sent a memo to the director of the detention facility, Karma Leeds, describing incidents in which Burgland believed Vasquez had behaved inappropriately. Burgland later sent a second memo to Leeds alleging that Vasquez had disobeyed an order Burgland had issued while she was serving as Vasquez's supervisor. Leeds performed her own investigation of the incident and subsequently removed Vasquez from his position at the detention facility and placed him in a field position. Although Burgland had set in motion the chain of events that ultimately led to Leeds' decision to transfer Vasquez, the Ninth Circuit determined Vasquez had failed to establish the necessary nexus between the evidence of Burgland's discriminatory animus and the actions of Leeds, the decision-maker. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). Because Vasquez failed to offer any evidence from which a reasonable factfinder could determine that Leeds was motivated by a discriminatory intent, the court found he could not show that Leeds' reason was a pretext for discrimination – despite the fact that Leeds knew of Burgland's prior discriminatory comments and possible discriminatory intent in raising her complaints about Vasquez.[6]

Plaintiff's theory is even more tenuous. Even assuming plaintiff provided evidence from which a factfinder could determine that Hansen was motivated by retaliation in deciding to subject plaintiff to a drug test, there is no nexus between this decision by Hansen and Rebella's decision to terminate plaintiff for his alleged refusal to submit an adequate sample. Plaintiff has

---

[6] The Ninth Circuit also determined Vasquez could not state a prima facie case of retaliation.

provided no evidence creating a genuine dispute about the fact that Rebella's decision was independent, made after his own investigation of what Apria's policies required when an employee provided two below-temperature samples.  Plaintiff does not even allege, let alone provide any evidence, that Rebella even knew about plaintiff's protected activity.  Absent such evidence, plaintiff's evidence of Hansen's alleged retaliatory intent cannot show pretext by Rebella.

In the absence of any evidence of retaliatory intent by Rebella, his allegedly mistaken determination that plaintiff had violated Apria's drug testing rules also is not evidence showing pretext.  Without retaliation or some other wrongful motivation by Rebella, plaintiff was simply an at-will employee who could be terminated for any reason, or no reason at all.  Rebella may have incorrectly determined that plaintiff had refused to submit an adequate sample as a matter of Apria policy, and he may have been mistaken in determining that Apria's policies mandated that plaintiff be terminated for refusal to provide a sample.  Nevertheless, without evidence of any wrongful motivation by Rebella in making these decisions, plaintiff's claim of retaliation cannot succeed.

IV.     Conclusion

Plaintiff has failed to establish a prima facie case of retaliation because he has not identified evidence from which a reasonable factfinder could determine that his safety complaints and workers' compensation claims were a substantial factor in the decision to terminate him.  Specifically, plaintiff offered no evidence that the individual who made the decision to terminate his employment, Ed Reblla, was aware of plaintiff's protected activities.  Plaintiff has likewise failed to present evidence from which a factfinder could determine that

Apria's stated reason for his termination was actually a pretext for retaliation. Rather, the only evidence in the record indicates Rebella decided to terminate plaintiff because he believed plaintiff had violated Apria's policies by refusing to provide an adequate drug testing sample after being injured in a workplace accident.

Accordingly, defendant's motion for summary judgment is GRANTED, and plaintiff's action is DISMISSED in its entirety, with prejudice.

IT IS SO ORDERED.

DATED: Portland, Oregon, May  14 , 2005.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge